

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00131-CV

**IN THE INTEREST OF J.P.H.** and S.R.G., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA00136
Honorable Kevin Henderson, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Irene Rios, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: August 16, 2023

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her

children, J.P.H. and S.R.G. (collectively, "the children"). Father R.H. appeals the trial court's

order terminating his parental rights to his child, J.P.H.[1] Mother challenges the sufficiency of the

evidence supporting the trial court's finding that termination was in the children's best interests.

In her second issue, Mother argues—because the termination of her parental rights was based on

insufficient evidence—the trial court's conservatorship determination was an abuse of discretion.

In his sole issue, Father R.H., who was incarcerated at the time of trial and did not appear at trial,

---

[1] To protect the identity of the minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother," "Father R.H.," and "Father H.G.," and we refer to the children using their initials or as "the children." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The trial court's order terminated Father R.H.'s rights to J.P.H., Father H.G.'s rights to S.R.G., and Mother's rights to both children. Although the trial court's order terminates the parental rights of Mother, Father R.H., and Father H.G. as to their respective children, only Mother and Father R.H. appeal.

argues the trial court erred when it denied his motion for continuance after he announced "not ready" at trial. We affirm the trial court's order.

## BACKGROUND

The Department of Family and Protective Services ("the Department") initially became involved in the underlying case in September 2021 following allegations of domestic violence and substance abuse. The case was referred to Family-Based Services ("FBS") when Mother tested positive for methamphetamines, and the children were placed with maternal grandmother ("Grandmother") and her spouse ("Grandfather") (collectively, "the grandparents"). The Department initiated removal proceedings after Mother failed to cooperate with FBS.

On January 28, 2022, the Department filed a petition seeking emergency removal, temporary managing conservatorship of the children, and termination of Mother's and Father R.H.'s parental rights. The trial court appointed the Department temporary managing conservator, and the children remained with their grandparents.

On January 20, 2023, the trial court held a bench trial via Zoom. The trial court heard testimony from: Sara Richter, the Department's FBS worker; Jennifer Galloway, the Department's caseworker; and M.M., the CASA volunteer assigned to the case.

On January 26, 2023, the trial court signed an order terminating Mother's parental rights to the children and Father R.H.'s parental rights to J.P.H. Specifically, the trial court terminated Mother's parental rights based on statutory grounds (O) and (P), and Father R.H.'s parental rights based on statutory grounds (N) and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (N), (O), (P). The trial court also found that it was in the children's best interests to terminate Mother's and Father R.H.'s parental rights. *See id.* § 161.001(b)(2). Mother and Father R.H. appeal.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable

factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

## MOTHER'S APPEAL

In her first issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the children's best interests. In her second issue, Mother challenges the trial court's conservatorship determination.

## BEST INTERESTS

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2] *See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding

---

[2] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*Physical and Emotional Needs of the Children, Stability, Vulnerabilities, and Plans*

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). "The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied).

Here, the children were less than two years old when they were placed with their grandparents while the case was in FBS. When the Department sought removal in January 2022, it maintained the children's placement with the grandparents. Jennifer Galloway, the Department's caseworker, testified the children see Grandmother and Grandfather as their "mom and dad." According to Galloway, the children are "always smiling and very happy children with their grandparents." Galloway further testified the children are always hugging the grandparents or being held by them, and the bond between the children and the grandparents is "very strong." Galloway and M.M., the CASA volunteer, testified the grandparents have demonstrated they can provide for the physical and emotional needs of the children.

For example, J.P.H. is diagnosed with autism and S.R.G. is suspected to have autism. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (listing "the child's age and physical and mental vulnerabilities" as a factor to consider by the trial court in determining the child's best interest). Galloway testified "[t]he grandparents are very quick to take [the children] to any and all

appointments" and "[t]hey were quick to set up speech therapy [and] occupational therapy" for the children. *See In re S.D.*, 980 S.W.2d 758, 764 (Tex. App.—San Antonio 1998, pet. denied) (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs").

Furthermore, Galloway stated the Department's permanency goal for the children is relative adoption by the grandparents. *See In re A.M.M.*, 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the child is "thriving in the current placement" in a "stable and nurturing environment with a planned adoption" supported the trial court's finding that termination is in the child's best interest).

In contrast, the trial court heard evidence that Mother continues to struggle with addiction to methamphetamines and has tested positive for illegal drugs throughout the pendency of the case. The trial court was "entitled to consider a parent's history of drug use in its [best-interests] determination[,]" and could have concluded that Mother's illegal drug use compromises her ability to support the children's emotional and physical needs. *See J.L.B.*, 2017 WL 4942855, at *7; *see also In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding mother was "unable to provide for the emotional and physical needs of her children" because of her continued illegal drug use).

Galloway testified that Mother was evicted from her apartment for failure to pay rent. She then lived with her father and stepmother until she was kicked out of their home. Although Mother has not told Galloway where she currently lives, Galloway stated she heard Mother was living in her car for a while and is currently "couch surfing." Because of Mother's unstable housing situation, Galloway testified Mother is unable to provide the children with a safe and stable environment.

Accordingly, the trial court could have formed a firm belief or conviction that these factors weigh in favor of termination.

*Emotional and Physical Danger and History of Substance Abuse*

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *S.D.*, 980 S.W.2d at 763). "Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *See In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.); *see also* TEX. FAM. CODE ANN. § 263.307(b)(8) (stating one of the factors to consider in a best interest determination is "whether there is a history of substance abuse by the child's family or others who have access to the child's home"). "The factfinder can give 'great weight' to the 'significant factor' of drug-related conduct." *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (quoting *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.)). "This court considers a parent's conduct before and after the Department's removal of the children." *S.J.R.-Z.*, 537 S.W.3d at 693.

As mentioned above, the trial court heard ample evidence that Mother continues to struggle with her addiction to methamphetamines. Sara Richter, the Department's Family-Based worker, testified Mother tested positive for methamphetamines and admitted to using methamphetamines when the case was in FBS. When Richter discussed Mother's substance abuse issue with her, Mother told Richter "she did not feel she has a problem with drugs[,]" and she did not want to participate in a drug treatment program; however, Mother stated she would participate in a drug treatment program to get her kids back. While the case was in FBS, Mother participated in a drug

assessment that recommended Mother engage in outpatient drug treatment. Mother did not follow the recommendation and also refused to participate in inpatient detox treatment.

Mother also admitted to Galloway that she used methamphetamines. Galloway testified that Mother continued to test positive for methamphetamines up until her last drug test in September 2022. Galloway referred Mother to additional drug tests after September 2022; however, Mother never took the tests, and she would not respond to Galloway. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs.").

Galloway testified that Mother started an outpatient drug treatment program, but she was discharged "because of her continued substance abuse." In August 2022, Mother checked into an inpatient drug treatment program, but "she discharged herself in less than [twelve] hours." The only drug-related classes Mother completed were those that were included in Mother's parenting classes. According to Galloway, Mother maintained that she did not have a drug problem until right before she checked into the inpatient program in August 2022. However, Galloway also testified Mother told her "multiple times that she would never stop her methamphetamine use as long as her children were with [Grandmother]."

Galloway opined termination of Mother's parental rights was in the children's best interests because—in addition to Mother's inability to provide for the children's physical and emotional needs—she has not addressed her substance abuse issues. The trial court could have formed a firm belief or conviction that these factors weigh in favor of termination.

*Programs, Acts or Omissions, Excuses for Acts or Omissions,*
*Willingness to Effect Positive Change*

According to her service plan, Mother was required to participate in and complete a psychological evaluation and follow any recommendations; individual counseling, if recommended from the psychological evaluation; a drug assessment and follow any drug treatment recommendations; parenting classes; and Mother was required to pass random drug tests. Mother was also required to participate in and complete a psychiatric evaluation following a recommendation from the psychological evaluation.

Galloway testified that Mother completed her psychological evaluation, the recommended psychiatric evaluation, parenting classes, and the drug assessment. However, Mother did not complete the drug treatment that was recommended from her psychological evaluation, psychiatric evaluation, and drug assessment.

As mentioned above, Mother failed random drug tests throughout the case and stopped taking the drug tests after September 2022. Despite the programs available to Mother, she refused to cooperate with the Department to address her substance abuse issues. The trial court was entitled to view Mother's lack of cooperation with the Department as an unwillingness to effect positive environmental and personal change. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (listing a parent's willingness to facilitate the Department's close supervision and to effect positive environmental and personal change as factors to be considered in a best-interest determination); *see also In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding failure to comply with a service plan may support a finding that termination of parental rights is in the child's best interest).

While there was evidence that Mother maintained stable employment, attended visits with the children, and had a loving relationship with the children, the trial court could have formed a firm belief or conviction that these factors weigh in favor of termination.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

### CONSERVATORSHIP

In her second issue, Mother argues she should be named a possessory conservator of the children because the trial court's parental termination findings are based on insufficient evidence. However, because we have determined the trial court did not err in terminating Mother's parental rights, she no longer has any legal rights with respect to the children and cannot challenge the portion of the termination order that relates to appointment of conservators for the children. *See In re J.C.R.*, No. 04-18-00949-CV, 2019 WL 2110109, at *7 (Tex. App.—San Antonio May 15, 2019, pet. denied) (mem. op.); *In re E.O.R.*, No. 04-18-00248-CV, 2018 WL 5808293, at *5 (Tex. App.—San Antonio Nov. 7, 2018, no pet.) (mem. op.); *In re L.T.P.*, No. 04-17-00094-CV, 2017 WL 3430894, at *6 (Tex. App.—San Antonio 2017, pet. denied) (mem. op.).

### FATHER'S APPEAL: PRESENCE AT TRIAL

In his sole issue, Father argues the trial court abused its discretion when it denied his request to be present at the trial. However, a careful review of the record reflects that the trial court did not deny a request to be present at trial because no such request was made to the trial court. The Department argues Father R.H. failed to preserve this issue for review. We agree.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court through a timely request, objection, or motion with sufficient

specificity, and that the trial court ruled or refused to rule on the complaint. *See* TEX. R. APP. P. 33.1(a); *see also In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) ("Under our Rules of Appellate Procedure, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefor, and obtain a ruling."); *In re A.N.G.*, No. 04-16-00377-CV, 2016 WL 6775589, at *1 (Tex. App.—San Antonio Nov. 16, 2016, no pet.) (mem. op.) ("Before presenting a due process complaint in an appeal from an order terminating parental rights, the appellant must have timely raised the due process complaint in the trial court."). "Allowing appellate review of unpreserved due process complaints in termination cases 'would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved.'" *A.N.G.*, 2016 WL 6775589, at *1 (quoting *L.M.I.*, 119 S.W.3d at 711).

Father R.H. was incarcerated during the entirety of the case, including the day of the trial, which was conducted via Zoom. Although counsel admitted Father R.H. has not participated in the suit, counsel announced Father R.H. was "not ready" to proceed to trial because he was not present on Zoom on the day of trial.[4] Counsel stated he "attempted to secure the [presence of Father R.H.] with no luck." Then, counsel stated he believed Father would be released in March 2023, and requested the trial court reset the trial until "after March to allow [Father R.H.] to get out to become engaged in services," but he was "announcing not ready because [Father R.H. is] not present."

On appeal, Father R.H. complains that the trial court denied his request to be present at the trial. However, no such request was ever made to the trial court. Counsel only requested the trial court reset trial so that Father R.H. could engage in services after he was released from prison. *See In re J.A.R.*, 658 S.W.3d 921, 926–27 (Tex. App.—El Paso 2023, pet. denied) (holding Father

---

[4] Counsel admitted Father R.H. was personally served with notice of the suit.

failed to preserve review of a complaint that incarceration precluded him from participating in the trial to terminate his parental rights when those grounds were not presented in his motion for continuance). Because Father R.H. never requested the trial court facilitate his presence at trial, he has failed to preserve this complaint for review. *See id.*

The trial court stated it was construing Father R.H.'s "not ready" announcement as a motion for continuance. Counsel for Father R.H. never objected to this construction or asserted a constitutional ground supporting his "not ready" announcement or request for a continuance.

To the extent Father R.H. complains the trial court's denial of his "not ready" announcement deprives him of constitutional rights, we note Father R.H. never raised a constitutional complaint in the trial court as required to preserve the issue for appellate review. *See In re M.N.R.*, No. 04-22-00025-CV, 2022 WL 2230928, at *2 (Tex. App.—San Antonio June 22, 2022, no pet.) (mem. op.) (holding Mother failed to preserve constitutional complaint for review when it was not raised in her "not ready" announcement or asserted after the trial court denied the "not ready" announcement).

To the extent Father R.H. complains about the trial court's denial of his oral motion for continuance, we hold the trial court did not abuse its discretion. Trial courts may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. "A trial court is presumed to have correctly exercised its discretion when it denies a motion that does not comply with the requirements of Rule 251 of the Texas Rules of Civil Procedure, including [when it is] not made in writing, verified, or supported by affidavit." *In re R.F. III*, 423 S.W.3d 486, 490 (Tex. App.—San Antonio 2014, no pet.). Moreover, the goal of establishing a stable, permanent home for a child is a compelling government interest that may justify the trial court's denial of a motion for continuance in a parental termination case. *See In re J.R.R.*, No. 04-22-00076-CV, 2022 WL 3047099, at *2 (Tex.

App.—San Antonio Aug. 3, 2022, no pet.) (mem. op.) (concluding the trial court did not abuse its discretion when it denied a motion for continuance when the motion did not comply with Rule 251 and permanency for the children in a parental termination case justified the denial). Here, the trial court did not abuse its discretion when it denied the oral motion for continuance because the motion did not comply with Rule 251. Further, a continuance would delay the children's need for permanence.

Accordingly, Father's sole issue is overruled.

## CONCLUSION

The trial court's termination order is affirmed.

Irene Rios, Justice